**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3962-23

TOWNSHIP OF CLINTON,

    Respondent-Respondent,

and

STEPHEN HARS,

    Petitioner-Appellant.

_____

Argued March 26, 2026 – Decided July 9, 2026

Before Judges Mawla and Puglisi.

On appeal from the New Jersey Public Employment Relations Commission, PERC No. 2024-007.

Paul W. Tyshchenko argued the cause for appellant (Caruso Smith Picini PC, attorneys; Paul W. Tyshchenko and Zinovia H. Stone, on the briefs).

Stephen E. Trimboli argued the cause for respondent Township of Clinton (The Chilla Business Counsel, LLC, attorneys; Stephen E. Trimboli, of counsel and on the brief; Farva Scott, on the brief).

Ramiro A. Perez, Deputy General Counsel, argued the cause for respondent Public Employment Relations Commission (Ramiro A. Perez, on the brief).

PER CURIAM

Petitioner Stephen Hars appeals from two final agency decisions of the Public Employment Relations Commission (PERC): a July 2, 2024 decision denying his request for appointment from the Special Disciplinary Arbitration (SDA) panel; and an August 5, 2024 decision denying reconsideration of that decision. We affirm.

I.

Hars was a patrol officer for the Clinton Township Police Department (CTPD), which is a non-civil service municipality. In September 2022, Hars responded to two separate incidents involving wild animals.

On September 9, 2022, Hars responded to a resident's call regarding a potentially rabid raccoon on the side of the road. He located the raccoon, began shooting at it, and ultimately discharged his weapon twelve times before killing the animal.

On September 25, 2022, Hars responded to a resident's call regarding a potentially sick fox near the road. He located the fox, began shooting at it, and ultimately discharged his weapon thirteen times before killing the animal.

Hars completed a weapons discharge form after each of the two incidents. In the form documenting the second incident, Hars reported he fired six rounds at the fox. Because the form was "messy," Hars's supervisor, Sergeant Joseph Sangiovanni, instructed him to rewrite it. In the rewritten form, Hars again reported he fired six rounds.

When CTPD Chief of Police Thomas DeRosa reviewed the form, he asked Hars to explain why he needed to fire six rounds at the animal to dispatch it. After Hars reviewed the body worn camera (BWC) footage of the incident, he wrote a memo to Chief DeRosa explaining he actually fired thirteen rounds at the fox. Hars then completed an amended weapons discharge form to correct the number of rounds he fired.

Because of the similarity of events, the discrepancy prompted Sergeant Sangiovanni to question the accuracy of the weapons discharge form regarding the first incident, in which Hars reported he fired four rounds at the raccoon. Sergeant Sangiovanni reviewed the BWC footage of that incident, which revealed Hars actually fired twelve rounds.

As a result, the Township issued Hars a Preliminary Notice of Disciplinary Action (PNDA) on November 15, 2022, suspending him without pay and

seeking his termination for gross misuse of firearms and false reporting.[1]  The PNDA listed eight charges or violations of policy:  misconduct; reports and bookings; neglect of duty; truthfulness; performance of duty; patrol officers' responsibilities; records accountability; and firearms procedure.

After conducting a departmental hearing, a hearing officer issued a report detailing his findings and recommending termination.  The hearing officer found, by a preponderance of the evidence, the Township established Hars committed all the charged violations except patrol officers' responsibilities.  In addition to detailing Hars's reckless use of firearms, the hearing officer determined Hars knowingly falsified the number of rounds he fired during each incident.

The hearing officer found several reasons for rejecting Hars's argument the misreporting was an unintentional oversight, "the most salient being the gross disparity in the number of rounds reported ([six and four]) vers[u]s the actual number discharged ([thirteen and twelve])."  He also noted Hars stated "he was embarrassed by the excessive number of shots it was taking him to dispatch the fox, thus highlighting the large number."  In addition, Hars's handgun held a total of eighteen rounds, which he was required to keep fully

---

[1]  The PNDA was not included in the record on appeal.

loaded; and although he did not reload the gun after the first incident, he ran out of rounds and had to reload during the second incident. Thus, it was "clear" to the hearing officer "Hars'[s] underreporting was intentional and even if he did not know the exact number of rounds because of his sloppy and haphazard conduct, he certainly realized that the number was greater than reported."

The hearing officer noted three of the charges—misconduct, reports and bookings, and neglect of duty—also represented violations of the New Jersey Criminal Code: false swearing, N.J.S.A. 2C:28-2(a); unsworn falsification to authorities, N.J.S.A. 2C:28-3(b); tampering with public records or information, N.J.S.A. 2C:28-7(a); official misconduct, N.J.S.A. 2C:30-2; and pattern of official misconduct, N.J.S.A. 2C:30-7(a). Although the county prosecutor declined to prosecute Hars, the hearing officer found tampering with public records "most closely track[ed] the factual pattern."

After the Township council voted to accept the hearing officer's findings and recommendations, it issued a final notice of disciplinary action terminating Hars. Thereafter, Hars submitted to PERC a request for appointment from the Special Disciplinary Arbitration (SDA) panel pursuant to N.J.S.A. 40A:14-210(a). The Township moved to dismiss the petition, arguing the alleged misconduct was equivalent to a criminal offense.

5

On July 2, 2024, PERC issued a final agency decision denying Hars's request for appointment from the SDA panel. PERC's director of arbitration, Mary E. Hennessy-Shotter, issued a letter decision noting "the hearing officer found that Hars lied in official police reports about the number of rounds he discharged from his weapon on two separate calls in September . . . 2022." While Hars certified he "was never interviewed, arrested, indicted, charged, or convicted of any crime," the letter explained "N.J.S.A. 40A:14-210(a) does not require a formal criminal investigation, the filing of formal criminal charges, or citation to the criminal statutes in the disciplinary investigation or disciplinary charges." Because Hars did not "provide[] a certification from a law enforcement official or expert to refute the hearing officer's finding that his alleged conduct is equivalent to a violation of the criminal laws," PERC concluded he was not eligible for SDA and instead the appeal of his termination must be pursued in Superior Court pursuant to N.J.S.A. 40A:14-150.

Hars moved for reconsideration, urging PERC to consider an October 3, 2022 Hunterdon County Prosecutor's Office (HCPO) internal affairs review form, which indicated the HCPO reviewed the matter "for the possibility of criminal prosecution" and determined "[u]nder the circumstances, criminal prosecution [wa]s not warranted." Hars also requested PERC to review Chief

6

DeRosa's sworn testimony from the departmental hearing, in which he stated the administrative charges against Hars were "not enough to charge criminally."

In the August 5, 2024 denial of reconsideration, Director Hennessy-Shotter advised PERC's rules do not provide for reconsideration of SDA decisions. She nevertheless addressed Hars's request, reiterating the reasons for PERC's prior decision and noting "the hearing officer went a step further finding that the sustained disciplinary charges are related to conduct that would constitute a violation of the criminal laws of New Jersey."

On appeal, Hars reprises the arguments he raised before PERC, namely: he was never interviewed, arrested, indicted, charged, or convicted of any crime in connection with the accusations he lied on the weapons discharge forms regarding the number of rounds fired in the September 2022 incidents. He also contends PERC erred in declining to consider his motion for reconsideration because it has inherent power, absent any statutory restrictions, to modify an order for good cause when so presented.

A-3962-23

II.

Our scope of review of an administrative agency's final determination is limited. Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). The agency's decision may not be disturbed unless shown to be arbitrary, capricious, unreasonable, or inconsistent with applicable law. Ibid. "Wide discretion is afforded to administrative decisions because of an agency's specialized knowledge." In re Request to Modify Prison Sentences, 242 N.J. 357, 390 (2020).

In reviewing an agency's decision, we "must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)). Our review is not designed "'to merely rubberstamp an agency's decision,'" but rather, "we are constrained 'to engage in a careful and principled consideration of the agency record and findings.'" Sullivan v. Bd. of Rev., Dep't of Labor, 471 N.J. Super. 147, 156 (App. Div. 2022) (quoting Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010)).

However, while "pension agencies are owed deference in their implementation of the retirement benefits statute . . . we are not 'bound by an agency's interpretation of a statute or its determination of a strictly legal issue.'" Rooth v. Bd. of Trs., Pub. Emps.' Ret. Sys., 472 N.J. Super. 357 (App. Div. 2022) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). Instead, a reviewing court "appl[ies] de novo review to an agency's interpretation of a statute or case law." Russo, 206 N.J. at 27. "The burden of proving that an agency action is arbitrary, capricious, or unreasonable is on the challenger." Parsells v. Bd. of Educ. of Somerville, 472 N.J. Super. 369, 376 (App. Div. 2022).

We begin with a review of the applicable statutes. A police officer cannot be removed "for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations" and may not "be suspended, removed, fined or reduced in rank" without "just cause." N.J.S.A. 40A:14-147. An officer must be apprised of any such charges by way of written complaint and is entitled to a hearing. Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 354 (2013).

N.J.S.A. 40A:14-150 provides, in pertinent part:

> Any member or officer of a police department or force in a [non-civil service] municipality . . . , who has been

tried and convicted upon any charge or charges, may obtain a review thereof by the Superior Court; provided, however, that in the case of an officer who is appealing removal from . . . office, employment or position for a complaint or charges, other than a complaint or charges relating to a criminal offense, the officer may, in lieu of serving a written notice seeking a review of that removal by the court, submit [an] appeal to arbitration pursuant to [N.J.S.A. 40A:14-209].

N.J.S.A. 40A:14-209(a) provides, in pertinent part:

When a law enforcement officer . . . employed by a [non-civil service] law enforcement agency . . . is suspended from performing [their] official duties without pay for a complaint or charges, other than (1) a complaint or charges relating to the subject matter of a pending criminal investigation, inquiry, complaint, or charge whether pre-indictment or post indictment, or (2) when the complaint or charges allege conduct that also would constitute a violation of the criminal laws of this State or any other jurisdiction, and the law enforcement agency . . . seeks to terminate that officer's . . . employment for the conduct that was the basis for the officer's . . . suspension without pay, the officer, as an alternative to the judicial review authorized under [N.J.S.A.] 40A:14-150 . . . may submit an appeal of [the] suspension and termination to [PERC] for arbitration conducted in accordance with the provisions of [N.J.S.A. 40A:14-210].

N.J.S.A. 40A:14-210(a) provides:

In lieu of serving a written notice to the Superior Court under the provisions of [N.J.S.A.] 40A:14-150 . . . seeking review of the termination of . . . employment for a complaint or charges, other than a complaint or

10

charges relating to a criminal offense, as prescribed in [N.J.S.A. 40A:14-209(a)], an officer . . . may submit [an] appeal to arbitration as hereinafter provided.

Read in conjunction, the statutes permit a police officer in a non-civil service municipality to request arbitration of the termination of employment, in lieu of pursuing an appeal in Superior Court. However, the officer is not eligible for arbitration when the charges allege conduct that would constitute a violation of the criminal law.

The record supports PERC's determination Hars was not entitled to arbitration because, as the hearing officer found, Hars was alleged to have knowingly made false statements in official police department records, which constitutes a violation of N.J.S.A. 2C:28-7(a)(1), tampering with public records or information. This statute criminalizes "knowingly mak[ing] a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by others for information of the government."

Contrary to Hars's contention, and as PERC explained, the fact that there was no formal criminal investigation, filing of formal criminal charges, or criminal conviction does not alter the outcome. The statute precludes arbitration

for charges where the underlying conduct would constitute a criminal offense, regardless of whether any criminal process commenced.

We are also unpersuaded by Hars's contention PERC erred in rejecting his motion for reconsideration. "[A]dministrative tribunals possess the inherent power of reconsideration of their judicial acts, except as qualified by statute. This function arises by necessary implication to serve the statutory policy." Handlon v. Belleville, 4 N.J. 99, 106 (1950). "In the absence of some legislative restriction, administrative agencies have the inherent power to reopen or to modify and to rehear orders that have been entered." In re Van Orden, 383 N.J. Super. 410, 419 (App. Div. 2006) (quoting Burlington Cnty. Evergreen Park Mental Hosp. v. Cooper, 56 N.J. 579, 600 (1970)).

Notwithstanding the absence of a formal procedure for reconsideration of a PERC decision regarding SDA eligibility, the record reflects Director Hennessy-Shotter considered the substance of Hars's request and rejected it. As reflected in the July 2, 2024 decision, the purported "new evidence" submitted by Hars did not constitute grounds for reversing its prior determination he was ineligible for SDA. Having considered the record in light of our standard of review, we discern no reason to disturb PERC's decisions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

12

A-3962-23